**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                                  No. CR 10-0456 JB

TYRUS BEGAYE,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed October 7, 2011 (Doc. 62). The Court held a sentencing hearing on October 12, 2011. The primary issue is whether the Court should vary downward from Defendant Tyrus Begaye's advisory guideline sentence to a sentence of 151-months imprisonment. Because the Court believes that the circumstances surrounding Begaye's offense counsel in favor of a downward variance, the Court will vary downward on Begaye's sentence to a term of 151-months imprisonment.

**PROCEDURAL BACKGROUND**

Begaye, pursuant to a Plea Agreement, filed April 7, 2011 (Doc. 44), pled guilty to the Indictment, filed February 23, 2010 (Doc. 15), charging him with a violation of 18 U.S.C. §§ 1153, 1111, and 2, that being second-degree murder, and aiding and abetting. The Plea Agreement stipulates to a 3-level reduction to Begaye's offense level for acceptance of responsibility pursuant to U.S.S.G. § 3D1.1 "so long as the Defendant continues to accept responsibility for the Defendant's criminal conduct." Plea Agreement ¶ 10, at 4. The parties agreed "that a specific sentencing range of 151 to 188 months is appropriate to the disposition of this case." Plea Agreement ¶ 5, at 2-3. Begaye agreed "not to seek a downward departure or variance from the applicable sentencing

guideline range as determined by the Court." Plea Agreement ¶ 10, at 5.[1] Begaye also "waive[d] the right to appeal [his] conviction(s) and any sentence" and also to "waive any collateral attack to [his] conviction(s) pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver." Plea Agreement ¶ 13, at 7.

The United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") for Begaye on June 27, 2011. In the PSR, the USPO calculates Begaye's total offense level to be 35. See PSR ¶ 43, at 11. The PSR calculates a base offense level of 38 under U.S.S.G. § 2A1.2(a). See PSR ¶ 36, at 11. The PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on Begaye's acceptance of responsibility. PSR ¶ 42, at 11. The PSR lists his criminal history category as I, based on 1 criminal history point. See PSR ¶ 46, at 12. The PSR calculates that an offense level of 35 and a criminal history category of I results in a guideline imprisonment range of 168 to 210 months. See PSR ¶ 80, at 19. There being no disputes about the factual findings in the PSR, the Court adopts them as its own.

On October 7, 2011, Begaye filed his Sentencing Memorandum. He emphasizes that "[h]e has very little criminal history and has no prior felony convictions." Sentencing Memorandum at 1. He notes that he has received his GED and an associate's degree in liberal arts. See Sentencing Memorandum at 1. He states that he has a fifteen-year old daughter who resides in Kirtland, New Mexico with her mother. See Sentencing Memorandum at 1. He asserts that he stays in contact with his daughter "and has attempted to participate in her life as fully as possible." Sentencing Memorandum at 1-2. He contends that she has visited while he has been in custody and that he

---

[1] The Court understands this provision in the Plea Agreement to mean that Begaye may seek a sentence at the bottom of the sentencing range to which the parties have stipulated, 151 to 188 months.

intends to maintain his relationship with her during his incarceration. See Sentencing Memorandum at 2. He argues that he will continue to further his education in prison with the resources available to him. See Sentencing Memorandum at 2. He asserts that the agreed upon sentencing range, 151 to 188 months, reflects an offense level of 34. See Sentencing Memorandum at 2. He asserts that Plaintiff United States of America agreed to this sentencing range based "upon the benefit to the government of not proceeding to a jury trial in this matter." Sentencing Memorandum at 2. He contends that he has "never been involved in any serious form of physical violence in the past" and that "[h]e is a good prospect to benefit from rehabilitative efforts to correct the issues that led him to his criminal conduct in this case." Sentencing Memorandum at 4.

Begaye notes that Plaintiff United States of America agreed to the sentencing range of 151 to 188 months based on the benefit it has received in not having to proceed to trial in this case. See Sentencing Memorandum at 2. He argues that the nature and circumstances of this case support a sentence of 151-months imprisonment. See Sentencing Memorandum at 2. Begaye contends that the victim, Payton Hogue,[2] came to Begaye's home late at night, "and made no effort to identify himself nor his reasons for coming to Mr. Begaye's residence." Sentencing Memorandum at 2. Begaye notes that his home is in a "very rural area, it has no exterior lighting, and Mr. Peyton had not come to the house in the past." Sentencing Memorandum at 2. He also asserts that the "residence [he] was occupying is not in any type of typical residential area," as "[t]here are no other homes nearby . . . [,] nor is it located on a roadway which would be typically used by pedestrians." Sentencing Memorandum at 3. Begaye acknowledges that he was intoxicated when the incident occurred. See Sentencing Memorandum at 3. He asserts that "[h]e believed that the act of

---

[2]In his Sentencing Memorandum, Begaye spells the name Payton as Peyton. The Court will use the spelling that the PSR uses unless it quotes directly from Begaye's Sentencing Memorandum.

becoming intoxicated, in his own home, in an isolated area, late at night, was reasonable under the circumstances." Sentencing Memorandum at 3. He argues that he "could not have reasonably foreseen that someone would arrive at his house late at night after he had become intoxicated." Sentencing Memorandum at 3. He contends that the victim "did not identify himself, knock on the door of the residence, or otherwise indicate his reasons for appearing at Mr. Begaye's residence," which "contributed to Mr. Begaye's fearfulness of Mr. Peyton and his initial decision to attempt to defend himself from any attack he believed Mr. Peyton was intending." Sentencing Memorandum at 3. He asserts that "he decided to forgo his right to a trial and admit his guilt," because he "did not cease his efforts to defend himself when they no longer appeared reasonable." Sentencing Memorandum at 3. He argues that "[h]is intoxication was the motivating factor for his misjudgment and inappropriate decision to continue to strike Mr. Peyton once he was not clearly in a position of self defense." Sentencing Memorandum at 3. Begaye notes that the applicable reports generated from the incident "indicate that Mr. Peyton had ingested both alcohol and marijuana." Sentencing Memorandum at 3. Begaye concedes that "Mr. Peyton's intoxication in no way justified the events of that evening," but argues that those facts "tend to support [his] position that Mr. Peyton's actions on that evening were odd and disturbing to him." Sentencing Memorandum at 3. He notes that he "was raised in a community where what non-Native Americans might refer to as 'witchcraft' are believed to be practiced by other members of the Navajo Nation." Sentencing Memorandum at 4. He asserts that his "intoxication and the other previously mentioned factors surrounding Mr. Peyton's unexplained presence at Mr. Begaye's residence gave Mr. Begaye, in his mind, a good faith belief that some form of witchcraft was being undertaken by Mr. Peyton." Sentencing Memorandum at 4. He concedes that his belief does not justify his actions, but offers this explanation to place in context his "fear and his reaction to that fear." Sentencing Memorandum at

-4-

4. The United States did not file a written response to the Sentencing Memorandum.

At the sentencing hearing on October 12, 2011, the parties agreed to the Court reducing Begaye's offense level a third level for acceptance of responsibility. See Transcript of Hearing at 3:20-4:5 (taken October 12, 2011)(Court, Spiers, Jameson)("Tr.").[3] The Court noted that, while the USPO did not recommend an upward adjustment on Begaye's offense level based on the nature of the offense, the Court tentatively thought that the facts might support such an upward departure. See Tr. at 4:14-17 (Court). The Court asked the parties to support their stipulated sentencing range of 151 to 188 months contained in the Plea Agreement. See Tr. at 4:18-23 (Court). Begaye emphasized that he has little criminal history and little involvement with the criminal justice system. See Tr. at 5:1-7 (Jameson). He also contended that he has a stronger educational background than many defendants appearing in federal court, which he asserted will benefit him in the rehabilitation process. See Tr. at 5:8-13 (Jameson). Begaye reiterated that the facts in this case are rather unique based on the nature of the victim's arrival at Begaye's residence. See Tr. at 5:14-6:3 (Jameson). Begaye noted that the agreed upon sentencing range results from the equivalent of a 1-level variance from Begaye's offense level under the guidelines. See Tr. at 6:4-13 (Jameson). Begaye stated that he overreacted to the situation and that this incident was a rare moment in which he acted in a confrontational manner. See Tr. at 6:19-24 (Begaye). The United States also asserted that there would have been some evidentiary challenges in the case were it to have proceeded to trial. See Tr. at 7:24-8:8 (Spiers). The United States noted that there were no eyewitnesses to the case other than Begaye and his co-Defendant. See Tr. at 8:11-13 (Spiers). The United States also contended that there was little or no forensic evidence available in this case for presentation to the jury in the event

---

[3]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

of a jury trial.  See Tr. at 8:13-16 (Spiers).  Begaye emphasized that he had no personal animosity against the victim, but reacted in an instinctual manner to the situation.  See Tr. at 11:3-13 (Begaye). The United States asserted that it believed a sentence of 168 months would be appropriate.  See Tr. at 10:15-21 (Spiers).

## ANALYSIS

Because the parties' Plea Agreement varies from the applicable guideline range for sound and legitimate reasons, the Court will accept the Plea Agreement.  The Court has considered the United States' request for a sentence of 168-months imprisonment and Begaye's request for a sentence of 151-months imprisonment.  Before any variance, an offense level of 35 and a criminal history category of I results in a guideline imprisonment range of 168 to 210 months.  After considering the circumstances of this case and the factors listed in 18 U.S.C. § 3553(a), the Court believes that a sentence of 151-months imprisonment is appropriate for Begaye's offense.

Begaye killed the victim by striking him with his hands and feet.  The Court has carefully considered the parties' arguments and the circumstances of this case.  The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant.  The Court believes that the punishment that the guidelines set forth is not appropriate for Begaye's offense.  The Court agrees with Begaye that a sentence of 151-months imprisonment is sufficient to reflect the seriousness of this offense.

This variance is the equivalent of a 1-level reduction in Begaye's offense level.  Begaye stated in his Sentencing Memorandum that the United States agreed to this reduction based "upon the benefit to the government of not proceeding to a jury trial in this matter."  Sentencing Memorandum at 2.  The Court notes that it is also customary in this District for the United States Attorney to agree to a 1-level reduction in a defendant's offense level based on the waiver of a

defendant's rights to appellate and post-conviction relief.  Begaye agreed to waive those rights in his Plea Agreement.  See Plea Agreement ¶ 13, at 7.  The Court recognizes that these two matters benefit the United States and provide it with an incentive to agree to a 1-level reduction in Begaye's offense level.

Furthermore, the United States has pointed to some weaknesses in its case if the case were to proceed to trial, including that the only eyewitnesses to the crime are Begaye and his co-Defendant, and that there is little forensic evidence available to present to a jury.  The Court has in the past held that weaknesses in the United States' case may be grounds for a variance, because in some cases, such as this one, a sentence of some length is a more just punishment than no sentence at all.  See United States v. Summers, 506 F.Supp.2d 686, 698-99 (D.N.M. 2007)(Browning, J.)("The Court can, under 18 U.S.C. § 3553(a), take into account the problems with the United States' case."); United States v. Jiang, 376 F.Supp. 2d 1153, 1157-58 (D.N.M. 2005)(Browning, J.)(granting a variance after examining the potential benefits to the United States and the public of going to trial); United States v. Stone, 374 F.Supp.2d 983, 990 (D.N.M. 2005)(Browning, J.)(granting a variance after considering the United States' prospects at trial).

Additionally, there are a variety of mitigating circumstances supporting a variance.  While Begaye engaged in a violent crime resulting in someone's else's death, the victim appeared in an unusual manner on Begaye's property, which is on the outskirts of the Navajo reservation, and does not appear to have explained his reason for being there or identified himself.  Given the isolated nature of Begaye's residence, those facts indicate that Begaye did not have a particularly culpable mental state in committing this crime and that the victim was to some extent responsible for instigating the incident.  Begaye's Native American beliefs may have made him unusually fearful under the circumstances as well.  While Begaye was intoxicated, he was lawfully on his own

property and was not violating any laws in consuming alcohol.  While Begaye has some prior charges for violent conduct, none of those charges resulted in a conviction.

The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals.  The Court believes that a sentence of 151 months is appropriate to reflect Begaye's the seriousness of Begaye's crime.  Other conditions that the Court will require as part of supervised release will also provide Begaye with some needed education, training, and care to prevent these problems from reoccurring.  The length of the sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  151-months imprisonment is a significant sentence, and will provide deterrence at both the general level and specifically to Begaye.  That sentence also reflects the seriousness of the crime, particularly when one takes into account the mitigating circumstances.  Imposing an additional 17 months will not more effectively protect the public or more fully reflect the factors embodied in 18 U.S.C. § 3553(a).  The Court routinely sentences at the low end of the guideline range unless aggravating circumstances counsel for a sentence deeper into the range.  Here, while most second-degree murders involve awful facts, there is nothing particularly aggravating about the circumstances in this case, and there are a number of mitigating circumstances.  Finally, sentencing at the low end of the agreed upon range gives Begaye the benefit of his bargain, as a sentence of 168-months imprisonment would give him a sentence at the low end of the advisory guideline range.  Given that he has given up his appellate rights, a sentence at the low end of the agreed upon range helps to avoid unwarranted sentencing disparities among similarly situated defendants convicted of similar crimes with similar criminal histories.

While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to

come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court sentences Begaye to 151-months imprisonment.

**IT IS ORDERED** that the request in the Defendant's Sentencing Memorandum, filed October 7, 2011 (Doc. 62), is granted.  The Court sentences Begaye to 151-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Roberto D. Ortega
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Thomas B. Jameson
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

    *Attorneys for the Defendant*